**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Docdeer Foundation*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANO LADEWIG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BIONTECH SE, UGUR SAHIN, and JENS HOLSTEIN,<br><br>Defendants. | No.: 2:24-cv-00337-DMG-SSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DOCDEER FOUNDATION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>Judge: Hon. Dolly M. Gee<br>Date: April 12, 2024<br>Time: 9:30 a.m.<br>Courtroom: #8C |

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT.................................................................................1

II. STATEMENT OF FACTS...................................................................................2

III. ARGUMENT .....................................................................................................5

   A. MOVANT'S APPOINTMENT AS LEAD PLAINTIFF IS APPROPRIATE...............................................................................................5

     1. The Procedure Required by the PSLRA ...................................................5

      a. Movant Is Willing to Serve As Class Representative..........................6

      b. Movant Has the Requisite Financial Interest in the Relief Sought by the Class .........................................................................6

   B. Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure .........................................................................7

      a. Movant's Claims are Typical of the Claims of all the Class Members .........................................................................................8

      b. Movant Will Adequately Represent the Class.....................................9

   C. APPROVING MOVANT'S CHOICE OF COUNSEL IS APPROPRIATE.............................................................................................10

IV. CONCLUSION ................................................................................................12

# **TABLE OF AUHTORITIES**

**Cases**

*In re Cavanaugh*,

306 F.3d 726 (9th Cir. 2002)..................................................................1, 6, 8

*Crawford v. Honig*,

37 F.3d 485 (9th Cir. 1994).............................................................................9

*In re Drexel Burnham Lambert Group*,

960 F.2d 285 (2d Cir. 1992)............................................................................9

*In re E-Trade Financial Corp*. Securuties Litigation,

No. 07-cv-8538 (S.D.N.Y.)............................................................................11

*Ferrari v. Gisch*,

225 F.R.D. 599 (C.D. Cal. 2004) ....................................................................8

*Gen. Tel. Co. of the Southwest v. Falcon*,

457 U.S. 147 (1982)........................................................................................9

*Gurevitch v. KeyCorp, et al.*,

No. 1:23-cv-01520 (N.D. Ohio Dec. 26, 2023) ...........................................11

*Hanlon v. Chrysler Corp.*,

150 F.3d 1011 (9th Cir. 1998)........................................................................8

*Haung v. Acterna Corp.*,

220 F.R.D. 255 (D. Md. 2004)........................................................................8

*Jaramillo v. Dish Network Corporation, et al.*,

No. 1:23-cv-00734 (D. Colo. Aug. 16, 2023).............................................11

*Maiden v. Merge Techs., Inc.*,

No. 06-cv-349, 2006 U.S. Dist. LEXIS 85635 (E.D. Wis. Nov. 21, 2006)........6

*Martin v. BioXcel Therapeutics, Inc. et al.*,

No. 3:23-cv-00915 (D. Conn. Oct. 4, 2023) ...............................................11

*In re Milestone Sci. Sec. Litig.*,

183 F.R.D. 404 (D.N.J. 1998)........................................................................8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................................8

*Petersen v. Stem, Inc. et. al.*,
  No. 3-23-cv-02329 (N.D. Cal. Aug 22, 2023) ...................................................11

*Rensin, Trustee of the Rensin Joint Trust v. United States Cellular Corporation, et al.*,
  No. 1:23-cv-02764 (N.D. Ill. July 11, 2023)......................................................11

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)..................................................................................8

*Solomon v. Peloton Interactive, Inc. et al.*,
  No. 1:23-cv-04279 (E.D.N.Y. Sept 7, 2023) ......................................................11

*Takeda v. Turbodyne Techs., Inc.*,
  67 F. Supp. 2d. 1129 (C.D. Cal. 1999) .................................................................8

*In re Tesla Inc. Securities Litigation*,
  No. 3:18-cv-4865 (N.D. Cal.) .............................................................................11

*Thant v. Rain Oncology Inc. et al.*,
  5:23-cv-03518 (N.D. Cal. Nov. 1, 2023) ............................................................11

*Thant v. Veru, Inc. et al.*,
  No. 1:22-cv-23960 (S.D. Fla. July 27, 2023)......................................................11

*In re U.S. Steel Securities Litigation*,
  No. 2:17-579-CB (W.D. Pa.) ...............................................................................11

*Villanueva v. Proterra Inc. et al.*,
  No. 5:23-cv-03519 (N.D. Cal. Oct. 23, 2023) ....................................................11

*Weiss v. York Hosp.*,
  745 F.2d 786 (3d Cir. 1984)..................................................................................9

**Statutes**

15 U.S.C. § 78u-4 ................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 ...............................................................................*passim*

## I.   PRELIMINARY STATEMENT

Presently pending before the Court is the above-captioned securities class action lawsuit (the "Action")[1] brought on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired BioNTech SE ("BioNTech" or the "Company") securities between March 30, 2022 and October 13, 2023, inclusive (the "Class Period"). Plaintiff in the Action alleges violations of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company, Ugur Sahin ("Sahin"), and Jens Holstein ("Holstein") (collectively, "Defendants").[2]

Movant Docdeer Foundation ("Movant") lost approximately $154,269.86 as a result of the alleged fraud during the Class Period. Movant respectfully submits this memorandum of law in support of its motion for (a) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (b) for approval of its selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel.

The PSLRA directs the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). Movant satisfies both requirements.

Movant believes that it has the largest financial interest in the outcome of the

---

[1] The above-captioned action pending in this Court is entitled *Ladewig v. BioNTech SE, et al.,* C.A. No. 2:24-cv-00337-DMG-SSC (C.D. Cal. Jan. 12, 2024) (the "*Ladewig* Action").

[2] The Action alleges violations under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

case.[3] As such, Movant meets the requirements of the PSLRA for appointment as Lead Plaintiff. Moreover, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the Class, and it will fairly and adequately represent the interests of the Class.[4]

Accordingly, Movant respectfully submits that it should be appointed Lead Plaintiff. Additionally, Movant's selection of Levi & Korsinsky as Lead Counsel for the proposed class should be approved by this Court.

## II.   STATEMENT OF FACTS[5]

BioNTech is a biotechnology company that develops and commercializes immunotherapies for cancer and other infectious diseases. ¶ 2. The Company has developed and continues to develop, among other products and product candidates, Comirnaty, a COVID-19 vaccine, in collaboration with Pfizer Inc. ("Pfizer"). *Id.* As part of BioNTech's collaboration agreement with Pfizer, the two companies share gross profits from COVID-19 vaccine sales in their respective territories. *Id.* In addition, Pfizer's inventory write-offs for COVID-19 products reduce BioNTech's gross profit share, thereby reducing BioNTech's vaccine revenues. *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. ¶ 4. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) BioNTech overstated demand for Comirnaty and/or

---

[3] Movant's certifications identifying its transactions during the Class Period and a chart detailing its losses are attached to the Declaration of Adam M. Apton, dated March, 12, 2024 ("Apton Decl."), as Exhibits A, and B, respectively.

[4] The Action excludes from the Class the Defendants, officer and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

[5] Citations to "¶_" are to paragraphs of the Class Action Complaint for Violation of the Federal Securities Laws (the "*Ladewig* Complaint") filed in the *Ladewig* Action. The facts set forth in the *Ladewig* Complaint are incorporated herein by reference.

its commercial prospects; (ii) the Company and/or Pfizer had accumulated excess inventory of raw materials for Comirnaty, as well as COVID-19 vaccine doses adapted to other, non-XBB.1.5 variants that were produced at risk; (iii) accordingly, BioNTech was at an increased risk of recording significant inventory write-offs and other charges related to Comirnaty; and (iv) as a result, Defendants' public statements were materially false and/or misleading at all relevant times. *Id.*

During pre-market hours on August 8, 2022, BioNTech issued a press release announcing the Company's second quarter 2022 financial results, including, *inter alia*, earnings-per-share ("EPS") under generally accepted accounting principles ("GAAP") of €6.45, missing consensus estimates by €0.63, and revenue of €3.2 billion, missing consensus estimates by €910 million, and representing a 39.7% year-over-year ("Y/Y") decrease. ¶ 5. The Company attributed the result, in part, to the "dynamic" development of the pandemic, which "caus[ed] a re-phasing of orders and . . . le[d] to fluctuations in quarterly revenues." According to BioNTech, "[t]his revenue fluctuation caused by the re-phasing of orders is expected to remain over the rest of the financial year with an uptake in demand in key markets in the fourth quarter of 2022 related to the Omicron-adapted bivalent vaccine, subject to regulatory approval." *Id.*

On this news, BioNTech's American Depositary Share ("ADS") price dropped 7.54%, or $13.81 per ADS, or to on August 8, 2022 close at $169.30 per ADS. ¶ 6.

On March 27, 2023, during pre-market hours, BioNTech issued a press release announcing the Company's fourth quarter and full year 2022 financial results, which, among other things, forecasted approximately €5 billion in COVID-19 vaccine revenues for the 2023 financial year, significantly below market estimates of over €8 billion. ¶ 7. As investment research firm Third Bridge noted, "the [C]ompany's guidance for full year 2023 COVID-19 vaccine revenue of approximately EUR 5.0B is significantly below current consensus of over EUR

$8.0B, reflecting the plummeting demand for population-wide levels of booster vaccinations[.]" *Id.*

In response to this news, BioNTech's ADS price declined $4.60 per ADS, or 3.59%, to close on March 27, 2023 at $123.60 per ADS. ¶ 8.

During after-market hours on Friday, October 13, 2023, Pfizer issued a press release announcing, among other things, that "[d]ue to lower-than-expected utilization for our COVID products, Pfizer recorded a non-cash charge of $5.5 billion to Cost of Goods Sold in the third quarter of 2023 . . . related to [*inter alia*] . . . inventory write-offs and other charges for Comirnaty of $0.9 billion." ¶ 9. Pfizer further disclosed that it "is . . . reducing its full-year 2023 revenue expectations for Comirnaty by approximately $2.0 billion due to lower-than-expected vaccination rates." *Id.*

On Monday, October 16, 2023, during pre-market hours, BioNTech issued a press release announcing that, as a result of Pfizer's inventory write-offs and other charges related to Comirnaty, BioNTech, too, would likely recognize up to €0.9 billion in inventory write-offs and other charges related to Comirnaty in the third quarter of 2023, which represents BioNTech's half under the gross profit-sharing agreement with Pfizer, and that "[a]ny such write-offs will reduce the revenues the Company would report for 2023." ¶ 10. According to BioNTech, Pfizer informed that Company "that the majority of the write-offs relate to raw materials, mainly formulation-related lipids, purchased during the pandemic, as well as COVID-19 vaccine doses adapted to other, non-XBB.1.5 variants produced at risk." *Id.*

As the market reacted to this news, BioNTech's ADS price fell 6.38%, or $6.61 per ADS, to close at $96.97 per ADS on October 16, 2023. ¶ 11.

## III.   ARGUMENT

### A.   MOVANT'S APPOINTMENT AS LEAD PLAINTIFF IS APPROPRIATE

#### 1.   The Procedure Required by the PSLRA

Once the Court decides the motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a) and (a)(3)(B).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)   has either filed the complaint or made a motion in response to a notice;

(bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that defendants could raise against it. Therefore, Movant is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Action.

### a. Movant Is Willing to Serve As Class Representative

On January 12, 2024, counsel in the *Ladewig* Action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against BioNTech and certain of its officers and directors, and which advised putative class members that they had sixty days from the date of the Notice to file a motion to seek appointment as a lead plaintiff in the *Ladewig* Action.[6]

Movant has reviewed the complaint filed in the *Ladewig* Action and has timely filed its motion pursuant to the Notice.

### b. Movant Has the Requisite Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the Action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Apton Decl., Ex. B. The Movant who "has the largest financial interest in this litigation and meets the adequate and typicality requirements of Rule 23 . . . is presumptively entitled to lead plaintiff status." *Maiden v. Merge Techs., Inc.*, No. 06-cv-349, 2006 U.S. Dist. LEXIS 85635, at *13 (E.D. Wis. Nov. 21, 2006) (citing *In re Cavanaugh*, 306 F.3d at 732).

Under the PSLRA, damages are calculated based on (i) the difference

---

[6] The *Ladewig* Action was filed in this Court on January 12, 2024. On the same day, the Notice was published over *Accesswire*, a widely-circulated national business-oriented wire service. See Apton Decl. Ex. C.

between the purchase price paid for the shares and the average trading price of the shares during the 90 day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90 day period. 15 U.S.C. § 78u-4(e).

During the Class Period, Movant purchased BioNTech securities in reliance upon the materially false and misleading statements issued by defendants, and was injured thereby. During the Class Period, Movant: (1) purchased 4,600 shares of BioNTech stock; (2) expended $388,124.62 on its purchases of BioNTech securities; (3) retained 2,600 shares of BioNTech securities through the end of the Class Period; and (4) suffered a substantial loss of $154,269.86[7] in connection with its purchases of BioNTech securities. *See* Apton Decl. Ex. B. Movant thus has a significant financial interest in the outcome of this case. To the best of its knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

**B.     Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure**

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the

---

[7] By disregarding gains and losses not attributable to the alleged fraud from intra-class period sales matched to intra-class period purchases, Movant's loss would be $180,636.83.

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification outlined in Fed. R. Civ. P. 23, only two – typicality and adequacy – are recognized as appropriate for consideration at this stage. *See Cavanaugh*, 306 F.3d at 730, n.5, 732. Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage. *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d. 1129, 1136 (C.D. Cal. 1999). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Cavanaugh*, 306 F.3d at 732; *see also Haung v. Acterna Corp.*, 220 F.R.D. 255, 259 (D. Md. 2004); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying its appointment as Lead Plaintiff.

**a. Movant's Claims are Typical of the Claims of all the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of Rule 23 because: (i) it suffered the same injuries as the absent class members; (ii) it suffered as a result of the same course of conduct by Defendants; and (iii) its claims are based on the same legal issues. *See Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiff's claims "arise from the same

conduct from which the other class members' claims and injuries arise"). Rule 23 does not require that the named plaintiff be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984). A finding of commonality frequently supports a finding of typicality. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with the claims of the other Class members. Movant, like the other Class members, acquired BioNTech securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. Thus, its claims are typical, if not identical, to those of the other Class members because Movant suffered losses similar to those of other Class members and its losses result from Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Weiss*, 745 F.2d at 809; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### b. Movant Will Adequately Represent the Class

Moreover, Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of Movant to whether the interests of Movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of Movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B); *see Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (citation omitted).

Movant's interests are clearly aligned with those of the other Class members. Not only is there no evidence of antagonism between Movant's interests and those

of the Class, but Movant has a significant and compelling interest in prosecuting the Action based on the large financial losses it has suffered as a result of the wrongful conduct alleged in the Action. This motivation, combined with Movant's identical interest with the Class members, demonstrates that it will vigorously pursue the interests of the Class. In addition, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B) (v).

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, it is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Action.

Moreover, Mr. Eric Hirsch, on behalf of Movant, considers himself to be a sophisticated investor, having been investing in the stock market for 36 years. Movant is an investment company for which Mr. Hirch is authorized to act on behalf of as its investment advisor. He resides in Cape Town, Western Cape, South Africa, and possesses a Ph.D. in Law from the University of Münster in Germany and is a licensed attorney. Mr. Hirch is currently retired, but prior to that, he was CEO of Bankhaus Wölbern, a bank in Hamburg, Germany. Further, Mr. Hirch has experience overseeing attorneys, as he has hired attorneys for business related matters. *See* Apton Decl., Ex. D (Mr. Hirch's Declaration in support of Movant's motion). Accordingly, Movant meets the adequacy requirement of Rule 23.

## C.   APPROVING MOVANT'S CHOICE OF COUNSEL IS APPROPRIATE

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should

interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as this one, are well-qualified to represent the Class, and have worked numerous times to achieve favorable settlements on behalf of shareholders. *See* Apton Decl. Ex. E (Levi & Korsinsky's firm resume, respectively). Moreover, Levi & Korsinsky has often been appointed as lead counsel in similar actions across the country arising under the federal securities laws on behalf of investors. As lead counsel in *In re U.S. Steel Securities Litigation,* No. 2:17-579-CB (W.D. Pa.), Levi & Korsinsky secured a $40 million recovery on behalf of investors in the securities of U.S. Steel. The firm also secured a $79 million recovery on behalf of E-Trade investors in *In re E-Trade Financial Corp.* Securities Litigation, No. 07-cv-8538 (S.D.N.Y.). Levi & Korsinsky also has trial experience relating to *In re Tesla Inc. Securities Litigation,* No. 3:18-cv-4865 (N.D. Cal.), representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018. *Id*. In the last year alone, Levi & Korsinsky has been appointed lead or co-lead counsel in a number of actions in this Circuit and across the Country including *Thant v. Rain Oncology Inc. et al.*, 5:23-cv-03518 (N.D. Cal. Nov. 1, 2023); *Jaramillo v. Dish Network Corporation, et al.*, No. 1:23-cv-00734 (D. Colo. Aug. 16, 2023); *Villanueva v. Proterra Inc. et al.,* No. 5:23-cv-03519 (N.D. Cal. Oct. 23, 2023); *Martin v. BioXcel Therapeutics, Inc. et al.,* No. 3:23-cv-00915 (D. Conn. Oct. 4, 2023); *Rensin, Trustee of the Rensin Joint Trust v. United States Cellular Corporation, et al.*, No. 1:23-cv-02764 (N.D. Ill. July 11, 2023); *Petersen v. Stem, Inc. et al.,* No. 3-23-cv-02329 (N.D. Cal. Aug 22, 2023); *Solomon v. Peloton Interactive, Inc. et al.,* No. 1:23-cv-04279 (E.D.N.Y. Sept 7, 2023); *Gurevitch v. KeyCorp, et al.*, No. 1:23-cv-01520 (N.D. Ohio Dec. 26, 2023); *Thant v. Veru, Inc. et al.,* No. 1:22-cv-23960

(S.D. Fla. July 27, 2023).Thus, this Court may be assured that in the event that Movant's Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## IV.    CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant its Motion and enter an order: (1) appointing Movant as Lead Plaintiff; and (2) approving Levi & Korsinsky as Lead Counsel for the Class.

Dated: March, 12, 2024                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Email: aapton@zlk.com
Email: amccall@zlk.com

*Proposed Lead Counsel for Docdeer Foundation*

## CERTIFICATE OF SERVICE

I, Adam M. Apton, hereby declare under penalty of perjury as follows:

I am a partner attorney at Levi & Korsinsky, LLP, with offices at 445 South Figueroa Street, 31st Floor, Los Angeles, CA 90071. I am over the age of eighteen.

On March, 12, 2024, I electronically filed the following **MEMORDANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DOCDEER FOUNDATION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on March, 12, 2024.

/s/ Adam M. Apton
Adam M. Apton

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Movant, certifies that this brief contains 3.490 words, which complies with the word limit of L.R. 11-6.1.

Executed on March, 12, 2024.

*/s/ Adam M. Apton*
Adam M. Apton
