Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Movant and [Proposed]*
*Lead Counsel for the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANO LADEWIG, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>BIONTECH SE, UGUR SAHIN, and JENS HOLSTEIN,<br><br>     Defendants. | Case No. 2:24-cv-00337-DMG-SSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF ORANEE DANIELS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL**<br><br><u>CLASS ACTION</u><br><br>JUDGE: Dolly M. Gee<br>HEARING: April 12, 2024<br>TIME: 9:30 a.m.<br>CTRM: 8C |

Oranee Daniels ("Movant") respectfully submits this memorandum in support of her motion for an Order, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(1) appointing Movant as Lead Plaintiff for all purchasers of BioNTech SE ("BioNTech" or the "Company") securities between March 30, 2022 and October 13, 2023, inclusive (the "Class Period"), to recover damages caused by Defendants' violations of the federal securities laws (the "Class"); and

(2) appointing The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class.

## I.    PERTINENT BACKGROUND

This action was commenced on January 12, 2024 against Defendants BioNTech SE, Ugur Sahin, and Jens Holstein ("Defendants") for violations under the Exchange Act. Dkt. No. 1. That same day, an early notice was issued pursuant to the PSLRA advising class members of, among other things, the allegations and claims in the complaint, the Class Period, and of their option to seek appointment as Lead Plaintiff. *See* Declaration of Laurence M. Rosen ("Rosen Decl."), Ex. 1, filed herewith.

Defendant BioNTech is a biotechnology company that develops and commercializes immunotherapies for cancer and other infectious diseases. The Company has developed and continues to develop, among other products and product candidates, Comirnaty, a COVID-19 vaccine, in collaboration with Pfizer Inc. ("Pfizer"). As part of BioNTech's collaboration agreement with Pfizer, the two companies share gross profits from COVID-19 vaccine sales in their respective territories. In addition, Pfizer's inventory write-offs for COVID-19 products reduce BioNTech's gross profit share, thereby reducing BioNTech's vaccine revenues. Dkt. No. 1 ¶ 2.

1

The Complaint alleges that throughout the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (1) BioNTech overstated demand for Comirnaty and/or its commercial aspects; (2) the Company and/or Pfizer had accumulated excess inventory of raw materials for Comirnaty, as well as COVID-19 vaccine doses adapted to other, non-XBB.1.5 variants that were produced at risk; (3) accordingly, BioNTech was at an increased risk of recording significant inventory write-offs and other charges related to Comirnaty; and (4) as a result, Defendants' public statements were materially false and/or misleading at all relevant times. *Id.* ¶ 4.

Then, on August 8, 2022, during pre-market hours, BioNTech issued a press release announcing the Company's second quarter 2022 financial results, including, *inter alia*, earnings-per-share ("EPS") under generally accepted accounting principles ("GAAP") of €6.45, missing consensus estimates by €0.63, and revenue of €3.2 billion, missing consensus estimates by €910 million, and representing a 39.7% year-over-year ("Y/Y") decrease. The Company attributed the result, in part, to the "dynamic" development of the pandemic, which "caus[ed] a re-phasing of orders and . . . le[d] to fluctuations in quarterly revenues." According to BioNTech, "[t]his revenue fluctuation caused by the re-phasing of orders is expected to remain over the rest of the financial year with an uptake in demand in key markets in the fourth quarter of 2022 related to the Omicron-adapted bivalent vaccine, subject to regulatory approval." *Id*. ¶ 5.

On this news, BioNTech's American Depositary Share ("ADS") price fell $13.81 per ADS, or 7.54%, to close at $169.30 per ADS on August 8, 2022. *Id*. ¶ 6.

Then, on March 27, 2023, during pre-market hours, BioNTech issued a press release announcing the Company's fourth quarter and fully year 2022 financial results, which, among other things, forecasted approximately €5 billion in COVID-19 vaccine revenues for the 2023 financial year, significantly below market estimates of over €8 billion. As investment research firm Third Bridge noted, "the

2

[C]ompany's guidance for full year 2023 COVID-19 vaccine revenue of approximately EUR 5.0B is significantly below current consensus of over EUR $8.0B, reflecting the plummeting demand for population-wide levels of booster vaccinations[.]" *Id*. ¶ 7.

On this news, BioNTech's ADS price fell $4.60 per ADS, or 3.59%, to close at $123.60 per ADS on March 27, 2023. *Id*. ¶ 8.

Then on Friday, October 13, 2023, during after-market hours, Pfizer issued a press release announcing, among other things, that "[d]ue to lower-than-expected utilization for our COVID products, Pfizer recorded a non-cash charge of $5.5 billion to Cost of Goods Sold in the third quarter of 2023 . . . related to [*inter alia*] . . . inventory write-offs and other charges for Comirnaty of $0.9 billion." Pfizer further disclosed that it "is . . . reducing its full-year 2023 revenue expectations for Comirnaty by approximately $2.0 billion due to lower-than-expected vaccination rates." *Id*. ¶ 9.

On Monday, October 16, 2023, during pre-market hours, BioNTech issued a press release announcing that, as a result of Pfizer's inventory write-offs and other charges related to Comirnaty, BioNTech, too, would likely recognize up to €0.9 billion in inventory write-offs and other charges related to Comirnaty in the third quarter of 2023, which represents BioNTech's half under the gross profit-sharing agreement with Pfizer, and that "[a]ny such write-offs will reduce the revenues the Company would report for 2023." According to BioNTech, Pfizer informed that Company "that the majority of the write-offs relate to raw materials, mainly formulation-related lipids, purchased during the pandemic, as well as COVID-19 vaccine doses adapted to other, non-XBB.1.5 variants produced at risk." *Id*. ¶ 10.

On this news, BioNTech's ADS price fell $6.61 per ADS, or 6.38%, to close at $96.97 per ADS on October 16, 2023. *Id*. ¶ 11.

Then, on November 16, 2023, BioNTech issued a press release announcing its third quarter 2023 financial results. Among other items, the Company confirmed

that "[i]nventory write-downs by BioNTech's collaboration partner Pfizer . . . [in connection with Comirnaty] reduced BioNTech's revenues by €507.9 million and €615.4 million for the three and nine months ended September 30, 2023, respectively." *Id*. ¶ 12.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages. *See Id*. ¶ 13.

## ARGUMENT

## II.   MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added); *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).

As set forth below, Movant satisfies the above criteria, has the largest financial interest of any movant in this litigation, and is therefore the most adequate plaintiff and should be appointed as Lead Plaintiff.

4

### A.    Movant is Willing to Serve as Class Representative

Movant has made a timely motion in response to a PSLRA early notice. *See* Rosen Decl., Ex. 1. Additionally, as set forth in her PSLRA certification, Movant attests that she has reviewed the complaint, adopts the allegations therein, and is willing to serve as representative of the class. *See* Rosen Decl., Ex. 2. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the class.

### B.    Movant has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff … is the person or group … that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Cavanaugh*, 306 F.3d at 730. While the PSLRA does not specify precisely how to calculate the "largest financial interest", a movant's approximate losses in the subject securities is the best measure. *Richardson v. TVIA*, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (citing cases).

Movant lost approximately $15,469.00 in connection with her purchases of BioNTech securities. *See* Rosen Decl., Ex. 3. Movant is not aware of any other movant that has suffered greater losses in the Company's securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

### C.    Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Federal Rule of Civil Procedure Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF ORANEE DANIELS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL
2:24-cv-00337-DMG-SSC

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that Movant satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that Movant satisfies the requirements of Rule 23 is sufficient. *Cavanaugh*, 306 F.3d at 730-31. At the lead plaintiff stage, "[t]he typicality and adequacy requirements of Rule 23 are the main focus" and "[e]xamination of the remaining requirements [of Rule 23] are deferred until the lead plaintiff moves for class certification." *Richardson*, 2007 WL 1129344, at * 4 (citing *Cavanaugh*, 306 F.3d at 730).

Movant fulfills all the pertinent requirements of Rule 23. Movant shares substantially similar questions of law and fact with the members of the class, and her claims are typical of the members of the class. Movant and all members of the class allege that Defendants violated the Exchange Act by publicly disseminating false and misleading statements about the Company and its business. Movant, as did all of the members of the class, purchased BioNTech securities at prices artificially inflated due to Defendants' misrepresentations and omissions, and was damaged thereby. These shared claims also satisfy the requirement that the claims of the representative party be typical of the claims of the class.

Thus, the close alignment of interests between Movant and other class members, as well as Movant's desire to prosecute this action on behalf of the class, provides ample reason to appoint Movant as Lead Plaintiff.

### D. Movant Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Movant's ability and desire to fairly and adequately represent the class has been discussed above. Movant is not aware of any unique defenses that Defendants could raise against her that would render Movant inadequate to represent the Class.

Accordingly, the Court should appoint Movant as Lead Plaintiff for the Class.

Further, Movant lives in San Francisco and has been investing for over 20 years. She has an MD and worked as a physician scientist in the biotech industry.

## III.    MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with the Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching the Class's and Movant's claims, including filing this action, reviewing publicly available financial and other documents and gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in securities litigation and class actions, having been appointed as lead counsel in securities class

7

actions in this District and in other courts throughout the nation. *See* Rosen Decl., Ex. 4.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge that will enable the firm to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## IV.   CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the class; (2) approving Rosen Law as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated:   March 12, 2024                    Respectfully submitted,

                                          **THE ROSEN LAW FIRM, P.A.**

                                          /s/ Laurence M. Rosen
                                          Laurence M. Rosen, Esq. (SBN 219683)
                                          355 South Grand Avenue, Suite 2450
                                          Los Angeles, CA 90071
                                          Telephone: (213) 785-2610
                                          Facsimile: (213) 226-4684
                                          Email: lrosen@rosenlegal.com

                                          *Counsel for Movant and [Proposed] Lead Counsel for the Class*

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF ORANEE DANIELS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL
2:24-cv-00337-DMG-SSC

## CERTIFICATE OF PAGE LIMIT AND WORD COUNT

The undersigned, counsel of record for Oranee Daniels, certifies that this brief is less than 25 pages and contains 2,228 words, which complies with the page limit of Your Honor's Standing Order Rule 4.c. and the word limit of L.R. 11-6.1.

Executed on March 12, 2024.

/s/ Laurence M. Rosen

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF ORANEE DANIELS
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL
2:24-cv-00337-DMG-SSC

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows: I am the Managing Partner of The Rosen Law Firm, P.A., with offices at 355 South Grand Avenue, Suite 2450, Los Angeles, CA 90071.  I am over the age of eighteen.

On March 12, 2024, I electronically filed the following **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF ORANEE DANIELS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on March 12, 2024.

/s/ Laurence M. Rosen
Laurence M. Rosen

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF ORANEE DANIELS
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL
2:24-cv-00337-DMG-SSC