POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movant Xia Rongpeng and*
*Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANO LADEWIG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BIONTECH SE, UGUR SAHIN, and JENS HOLSTEIN, <br><br> Defendants. | Case No. 2:24-cv-00337-DMG-SSC <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF XIA RONGPENG FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL** <br><br> DATE:  April 12, 2024 <br> TIME:  9:30 a.m. <br> JUDGE:  Dolly M. Gee <br> CTRM:  8C |

MEMORANDUM OF POINTS AND AUTHORITIES - 2:24-cv-00337-DMG-SSC

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   STATEMENT OF FACTS .......................................................................................2

III.  ARGUMENT ...........................................................................................................6

    A.     RONGPENG SHOULD BE APPOINTED LEAD PLAINTIFF...................6

           1.     Rongpeng Is Willing to Serve as Class Representative ..........................7

           2.     Rongpeng Has the "Largest Financial Interest" ......................................8

           3.     Rongpeng Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure .......................................................10

           4.     Rongpeng Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses .................................13

    B.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED.................................................................................................13

IV.  CONCLUSION.......................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
   No. 5:11-CV-04003-LHK, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012).........................9

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...............................................................................11

*Hessefort v. Super Micro Comput., Inc.*,
   317 F. Supp. 3d 1056 (N.D. Cal. 2018)..................................................................10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ...................................................................................9

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG) (RER), 2007 WL 680779
   (E.D.N.Y. Mar. 2, 2007) ...............................................................................9, 14

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..........................................................................9

*In re Petrobras Securities Litigation*,
   No. 14-cv-09662 (S.D.N.Y.)...................................................................................14

*In re Solar City Corp. Sec. Litig.*,
   No. 16-CV-04686-LHK, 2017 WL 363274 (N.D. Cal. Jan. 25, 2017)......................10

*Knox v. Yingli Green Energy Holding Co.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) ....................................................................9

*Lax v. First Merchants Acceptance Corp.*,
   No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ....................................8, 9

*Nicolow v. Hewlett Packard Co.*,
   No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013)..............................9

*Osher v. Guess?, Inc.*,
   No. CV01-00871LGB(RNBX), 2001 WL 861694
   (C.D. Cal. Apr. 26, 2001) .......................................................................................13

*Richardson v. TVIA, Inc.*,
    No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ......................11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..................................................................................12

*Tai Jan Bao v. SolarCity Corp.*,
    No. 14-CV-01435-BLF, 2014 WL 3945879 (N.D. Cal. Aug. 11, 2014) ....................10

**Statutes**

15 U.S.C. § 78u-4.............................................................................................*passim*

Private Securities Litigation Reform Act of 1995 ........................................................*passim*

Securities Exchange Act of 1934 .................................................................................1, 11

**Rules**

Fed. R. Civ. P. 23 .........................................................................................................*passim*

Movant Xia Rongpeng ("Rongpeng") respectfully submits this Memorandum of Points and Authorities in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Rongpeng as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired BioNTech SE ("BioNTech" or the "Company") securities between March 30, 2022 and October 13, 2023, both dates inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## I.    PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that Defendants defrauded investors in violation of the Exchange Act. BioNTech investors, including Rongpeng, incurred significant losses following the disclosures of the alleged fraud, which caused the prices of BioNTech securities to fall sharply, damaging Rongpeng and other BioNTech investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).    During the Class Period, Rongpeng purchased 7,500 BioNTech

American Depositary Shares ("ADSs"), expended $1,047,192 on these purchases, retained 6,000 of his BioNTech ADSs, and, as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $191,816 calculated on a first-in, first-out ("FIFO") basis, or $127,135 calculated on a last-in, first-out ("LIFO") basis. *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A at *2-3. Accordingly, Rongpeng believes that he has the largest financial interest in the relief sought in the Action. Beyond his considerable financial interest, Rongpeng also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Rongpeng has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Rongpeng respectfully requests that the Court enter an Order appointing him as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel for the Class.

## II. STATEMENT OF FACTS

BioNTech is a biotechnology company that develops and commercializes immunotherapies for cancer and other infectious diseases. Complaint at 2 ¶ 2. The

Company has developed and continues to develop, among other products and product candidates, Comirnaty, a COVID-19 vaccine, in collaboration with Pfizer Inc. ("Pfizer"). *Id.* As part of BioNTech's collaboration agreement with Pfizer, the two companies share gross profits from COVID-19 vaccine sales in their respective territories. *Id.* at 2-3. In addition, Pfizer's inventory write-offs for COVID-19 products reduce BioNTech's gross profit share, thereby reducing BioNTech's vaccine revenues. *Id.* at 3.

During the Class Period, as the number of COVID-19 cases began to decline, one variant of the virus, namely, the Omicron XBB.1.5 subvariant, increasingly began to account for the majority of reported cases. *Id.* ¶ 3. Despite not yet having a version of Comirnaty approved by the U.S. Food and Drug Administration to treat this subvariant, BioNTech represented to the market and investors during the Class Period that Comirnaty remained relevant and in-demand. *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. *Id.* ¶ 4. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) BioNTech overstated demand for Comirnaty and/or its commercial prospects; (ii) the Company and/or Pfizer had accumulated excess inventory of raw materials for Comirnaty, as well as COVID-19 vaccine doses adapted to other, non-XBB.1.5 variants that were produced at risk; (iii) accordingly, BioNTech was at an increased risk of recording significant inventory write-offs and other charges related to Comirnaty; and (iv)

as a result, Defendants' public statements were materially false and/or misleading at all relevant times. *Id.*

On August 8, 2022, during pre-market hours, BioNTech issued a press release announcing the Company's second quarter 2022 financial results, including, *inter alia*, earnings-per-share under generally accepted accounting principles of €6.45, missing consensus estimates by €0.63, and revenue of €3.2 billion, missing consensus estimates by €910 million, and representing a 39.7% year-over-year decrease. *Id.* at 3-4 ¶ 5. The Company attributed the result, in part, to the "dynamic" development of the pandemic, which "caus[ed] a re-phasing of orders and . . . le[d] to fluctuations in quarterly revenues." *Id.* at 4. According to BioNTech, "[t]his revenue fluctuation caused by the re-phasing of orders is expected to remain over the rest of the financial year with an uptake in demand in key markets in the fourth quarter of 2022 related to the Omicron-adapted bivalent vaccine, subject to regulatory approval." *Id.*

On this news, BioNTech's ADS price fell $13.81 per ADS, or 7.54%, to close at $169.30 per ADS on August 8, 2022. *Id.* ¶ 6.

On March 27, 2023, during pre-market hours, BioNTech issued a press release announcing the Company's fourth quarter and full year 2022 financial results, which, among other things, forecasted approximately €5 billion in COVID-19 vaccine revenues for the 2023 financial year, significantly below market estimates of over €8 billion. *Id.* ¶ 7. As investment research firm Third Bridge noted, "the [C]ompany's guidance for full

year 2023 COVID-19 vaccine revenue of approximately EUR 5.0B is significantly below current consensus of over EUR $8.0B, reflecting the plummeting demand for population-wide levels of booster vaccinations[.]" *Id.*

On this news, BioNTech's ADS price fell $4.60 per ADS, or 3.59%, to close at $123.60 per ADS on March 27, 2023. *Id.* at 5 ¶ 8.

On Friday, October 13, 2023, during after-market hours, Pfizer issued a press release announcing, among other things, that "[d]ue to lower-than-expected utilization for our COVID products, Pfizer recorded a non-cash charge of $5.5 billion to Cost of Goods Sold in the third quarter of 2023 . . . related to [*inter alia*] . . . inventory write-offs and other charges for Comirnaty of $0.9 billion." *Id.* ¶ 9. Pfizer further disclosed that it "is . . . reducing its full-year 2023 revenue expectations for Comirnaty by approximately $2.0 billion due to lower-than-expected vaccination rates." *Id.*

On Monday, October 16, 2023, during pre-market hours, BioNTech issued a press release announcing that, as a result of Pfizer's inventory write-offs and other charges related to Comirnaty, BioNTech, too, would likely recognize up to €0.9 billion in inventory write-offs and other charges related to Comirnaty in the third quarter of 2023, which represents BioNTech's half under the gross profit-sharing agreement with Pfizer, and that "[a]ny such write-offs will reduce the revenues the Company would report for 2023." *Id.* ¶ 10. According to BioNTech, Pfizer informed that Company "that the majority of the write-offs relate to raw materials, mainly formulation-related lipids, purchased

during the pandemic, as well as COVID-19 vaccine doses adapted to other, non-XBB.1.5 variants produced at risk." *Id.*

On this news, BioNTech's ADS price fell $6.61 per ADS, or 6.38%, to close at $96.97 per ADS on October 16, 2023. *Id.* at 6 ¶ 11.

Then, on November 16, 2023, BioNTech issued a press release announcing its third quarter 2023 financial results. *Id.* ¶ 12. Among other items, the Company confirmed that "[i]nventory write-downs by BioNTech's collaboration partner Pfizer . . . [in connection with Comirnaty] reduced BioNTech's revenues by €507.9 million and €615.4 million for the three and nine months ended September 30, 2023, respectively." *Id.*

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the plaintiff in the Action and other Class members have suffered significant losses and damages. *Id.* ¶ 13.

## III.   ARGUMENT

### A.   RONGPENG SHOULD BE APPOINTED LEAD PLAINTIFF

Rongpeng should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the Action to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a

motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate.  *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff.  *Id.* § 78u-4(a)(3)(B)(i).  The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Rongpeng satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.    Rongpeng Is Willing to Serve as Class Representative

On January 12, 2024, counsel for plaintiff in the Action caused the statutorily required Notice of this Action to be published via *AccessWire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action lawsuit had

been filed against BioNTech and other defendants, and which advised investors in BioNTech securities that they had until March 12, 2024—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Pafiti Decl., Ex. B at *2.

Rongpeng has filed the instant motion pursuant to the Notice, and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C at *2-3. Accordingly, Rongpeng satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.  Rongpeng Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Rongpeng has the largest financial interest of any BioNTech investor or investor group seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with courts

nationwide,[1] these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District. *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012). Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g.*, *Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 WL 792642, at *4.

During the Class Period, Rongpeng: (1) purchased 7,500 BioNTech ADSs; (2) expended $1,047,192 on his purchases of BioNTech ADSs; (3) retained 6,000 of his BioNTech ADSs; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $191,816 calculated on a FIFO basis, or $127,135 calculated on a LIFO basis, in connection with his Class Period transactions in BioNTech securities. *See* Pafiti Decl., Ex. A at *2-3. To the extent that Rongpeng possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

---

[1] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

### 3. Rongpeng Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff movant satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Tai Jan Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF, 2014 WL 3945879, at *3 (N.D. Cal. Aug. 11, 2014). "This showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy." *In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at *5 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Rongpeng's claims are typical of those of the Class. Rongpeng alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning BioNTech, or by omitting to state material facts necessary to make the statements they did make not misleading. Rongpeng, like other Class members, purchased BioNTech securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove BioNTech's ADS price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the

representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

Rongpeng is an adequate representative for the Class. Here, Rongpeng has submitted a signed Certification declaring his commitment to protect the interests of the Class. *See* Pafiti Decl., Ex. C at *2-3. There is no evidence of antagonism or conflict between Rongpeng's interests and those of the Class, and Rongpeng's significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation that gives him an incentive to vigorously prosecute the claims in this Action on behalf of the Class. Moreover, Rongpeng has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz to the Court for approval as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, Rongpeng is also represented by the Chinese law firm the Hao Law Firm in this Action.

Further demonstrating his adequacy, Rongpeng has submitted a signed Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Pafiti Decl., Ex. D at 1-4 ¶¶ 1-7, 9-11.

#### 4.   Rongpeng Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Rongpeng as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)   will not fairly and adequately protect the interest of the class; or

(bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Rongpeng's ability and desire to fairly and adequately represent the Class has been discussed above.  Rongpeng is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Rongpeng should be appointed Lead Plaintiff for the Class.

### B.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should interfere with a Lead Plaintiff's selection only when necessary to "protect the interests of the class."  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at \*4 (C.D. Cal. Apr. 26, 2001) ("A court may reject the lead plaintiff's choice only if it is necessary to protect the interests of the class.").

Here, Rongpeng has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Pafiti Decl., Ex. E at 1-11. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* at 1. As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* at 2. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* at 1-11. More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.* at 2-3.

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Rongpeng's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute the Action effectively and expeditiously. Thus, the Court may be assured that by approving Rongpeng's selection of

Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## IV.    CONCLUSION

For the foregoing reasons, Rongpeng respectfully requests that the Court issue an Order: (1) appointing Rongpeng as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated:  March 12, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movant Xia Rongpeng and Proposed Lead Counsel for the Class*

HAO LAW FIRM
Junbo Hao
Room 3-401 No. 2 Building,
No. 1 Shuangliubei Street
100024  Beijing
People's Republic of China
Telephone: +86 137-1805-2888
jhao@haolaw.cn

*Additional Counsel for Movant Xia Rongpeng*

CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Jennifer Pafiti
Jennifer Pafiti

CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Xia Rongpeng, certifies that this brief contains 3,526 words, which complies with the word limit of L.R. 11-6.1.

Executed on March 12, 2024.

*/s/ Jennifer Pafiti*
Jennifer Pafiti