UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ADRIANO LADEWIG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BIONTECH SE, UGUR SAHIN, and JENS HOLSTEIN <br><br><br> Defendants. | Case No. 1:24-cv-05310-KPF |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..............................................................................................................................2

I.      THE AC DOES NOT PLEAD FALSITY. ...........................................................................2

      A.      BioNTech's Statements About Doses Ordered Were Not Misleading. ................... 2

      B.      BioNTech Did Not Conceal "Imminent" Write-Offs. ............................................. 5

      C.      The PSLRA's Safe Harbor Applies. ....................................................................... 7

II.     THE AC DOES NOT PLEAD A STRONG INFERENCE OF SCIENTER.......................8

CONCLUSION...........................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*,
2018 WL 1273343 (S.D.N.Y. Mar. 5, 2018) ..............................................................................10

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021).......................................................................................11

*In re AT&T/DirecTV Now Sec. Litig.*,
480 F. Supp. 3d 507 (S.D.N.Y. 2020), *aff'd*,
2022 WL 17587853 (2d Cir. Dec. 13, 2022) ............................................................................4

*In re Athenex, Inc. Sec. Litig.*,
2023 WL 7690175 (W.D.N.Y. Sept. 29, 2023) .........................................................................8

*In re Avon Prods., Inc. Sec. Litig.*,
2009 WL 848017 (S.D.N.Y. Feb. 23, 2009).............................................................................7

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
556 F. Supp. 3d 100 (D. Conn. 2021).......................................................................................9

*Bratusov v. Comscore, Inc.*,
2020 WL 3447989 (S.D.N.Y. June 24, 2020) .........................................................................11

*Chapman v. Mueller Water Prods., Inc.*,
466 F. Supp. 3d 382 (S.D.N.Y. 2020).......................................................................................6

*Christine Asia Co. v. Ma*,
718 F. App'x 20 (2d Cir. 2017) ...............................................................................................10

*Dobina v. Weatherford Int'l Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012).....................................................................................11

*In re Eletrobras Sec. Litig.*,
245 F. Supp. 3d 450 (S.D.N.Y. 2017).......................................................................................8

*In re Express Scripts Holdings Co. Sec. Litig.*,
773 F. App'x 9 (2d Cir. 2019) ..............................................................................................3, 5

*In re Fannie Mae 2008 Sec. Litig.*,
525 F. App'x 16 (2d Cir. 2013) ................................................................................................6

*Gauquie v. Albany Molecular Rsch., Inc.*,
2016 WL 4007591 (E.D.N.Y. July 26, 2016)...........................................................................9

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)......................................................................................10

*In re Hain Celestial Grp., Inc. Sec. Litig.*,
    20 F.4th 131 (2d Cir. 2021) ...................................................................................................3

*Hensley v. IEC Elecs. Corp.*,
    2014 WL 4473373 (S.D.N.Y. Sept. 11, 2014).......................................................................11

*In re Jumei Int'l Holding Ltd. Sec. Litig.*,
    2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) .............................................................................10

*Karimi v. Deutsche Bank Aktiengesellschaft*,
    607 F. Supp. 3d 381 (S.D.N.Y. 2022)....................................................................................10

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
    518 F. Supp. 3d 772 (S.D.N.Y. 2021) .....................................................................................9

*Marcu v. Cheetah Mobile Inc.*,
    2020 WL 4016645 (S.D.N.Y. July 16, 2020) ..........................................................................6

*In re MBIA, Inc., Sec. Litig.*,
    700 F. Supp. 2d 566 (S.D.N.Y. 2010).......................................................................................9

*Nadoff v. Duane Reade, Inc.*,
    107 F. App'x 250 (2d Cir. 2004) ..............................................................................................3

*Nandkumar v. AstraZeneca PLC*,
    2023 WL 3477164 (2d Cir. May 16, 2023) ..............................................................................9

*NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*,
    2012 WL 3191860 (S.D.N.Y. Feb. 9, 2012)............................................................................6

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).....................................................................................................5

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
    367 F. Supp. 3d 16 (S.D.N.Y. 2019)........................................................................................3

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)...................................................................................6, 9

*Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*,
    2023 WL 3569068 (S.D.N.Y. May 19, 2023) ..........................................................................1

*Robeco Cap. Growth Funds SICAV v. Peloton Interactive, Inc.*,
    665 F. Supp. 3d 522 (S.D.N.Y. 2023)......................................................................................4

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
    732 F. Supp. 3d 300 (S.D.N.Y. 2024)........................................................................3, 9

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001)........................................................................................10

*In re Sec. Cap. Assur. Ltd. Sec. Litig.*,
    729 F. Supp. 2d 569 (S.D.N.Y. 2010).......................................................................10

*Smith v. PureCycle Techs., Inc.*,
    2024 WL 5186586 (S.D.N.Y. Dec. 20, 2024) ............................................................8

*Stadium Cap. LLC v. Co-Diagnostics, Inc.*,
    2024 WL 456745 (S.D.N.Y. Feb. 5, 2024)...............................................................3, 7

*Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc.*,
    412 F. Supp. 3d 353 (S.D.N.Y. 2019), *aff'd*, 826 F. App'x 111 (2d Cir. 2020)........................4

*Steinberg v. Ericsson LM Tel. Co.*,
    2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) ............................................................3

*Strougo v. Barclays PLC*,
    105 F. Supp. 3d 330 (S.D.N.Y. 2015)........................................................................9

*Tampa Bay City Pension v. Generac Holdings Inc.*,
    2025 WL 435928 (E.D. Wis. Feb. 7, 2025)................................................................2

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Hldgs., Inc.*,
    2022 WL 989240 (W.D. Tenn. Mar. 31, 2022), *aff'd*, 83 F.4th 514 (6th Cir. 2023) ..............11

*Villare v. Abiomed, Inc.*,
    2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021)......................................................4, 7, 9

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)......................................................................................7

*Yannes v. SCWorx Corp.*,
    2021 WL 2555437 (S.D.N.Y. June 21, 2021) .............................................................9

**PRELIMINARY STATEMENT**[1]

"The securities laws do not require any issuer" to "divin[e] market volatility with the precision that Plaintiffs seek, especially not in the context of all the financial market challenges, uncertainties, and volatility engendered by the COVID-19 pandemic." *Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*, 2023 WL 3569068, at *20 (S.D.N.Y. May 19, 2023). Plaintiffs perpetuate a theory of fraud at odds with that precept and attempt to defend a complaint that falls short of the PSLRA's heightened pleading standards.

Plaintiffs' Opposition winnows their claims to two, arguing that BioNTech's statements misleadingly concealed "cratering demand" and imminent write-offs. But the AC does not plead particularized facts supporting these remaining theories. Regarding the first, the Opposition claims that BioNTech's disclosures about existing "orders" provided a proxy for "demand," but the two are not the same. In any event, Defendants were not duty-bound to hypothesize about demand, and BioNTech's supposed failure to do so is not securities fraud. Regardless, no reasonable investor could have interpreted BioNTech's disclosures as predicting growing or even stable demand given BioNTech's repeated warnings that demand could "dissipate," its statement that 2023 would be a "trough" year, and its quarterly disclosures showing declining Comirnaty revenue.

The Opposition's arguments about write-offs are equally unavailing. Plaintiffs simultaneously concede that BioNTech accurately disclosed historical write-offs and argue that those write-offs should have been larger. Plaintiffs cannot have it both ways. And Defendants

---

[1] Capitalized terms have the meaning ascribed in Defendants' opening brief ("Mot.," Dkt. 64). "Opp." refers to Plaintiffs' Opposition (Dkt. 66).

had no duty to predict write-offs resulting from *future* vaccine reformulations or *future* order cancellations.  Even if such duty existed, BioNTech's disclosures satisfied it.

The Opposition also fails to establish the requisite "strong inference" of scienter.  Plaintiffs concede the Individual Defendants lacked any fraudulent motive, and their boilerplate allegations cannot save their claim.  The AC should be dismissed with prejudice.

## ARGUMENT

### I.    THE AC DOES NOT PLEAD FALSITY.

#### A.    BioNTech's Statements About Doses Ordered Were Not Misleading.

Without pointing to specific disclosures, Plaintiffs contend that BioNTech's statements regarding "signed orders"—alleged to have been made between March 30 and November 7, 2022[2]—concealed declining demand, delivery "rejections," and order "cancellations."  (Opp. at 8, 11.)  Not so.

*None* of BioNTech's disclosures addressed "existing demand."  (Mot. at 11-12.)[3]  Instead, Plaintiffs attempt to draw a parallel between the firm orders BioNTech reported in 2022 and "demand for Comirnaty."  (Opp. at 11-17.)  But "orders" are contractual; "demand" is abstract.  As one court explained, "[o]nly statements or omissions of *fact* can be actionable" and because demand "is not a set data point that can be objectively known at a given point in time," undisclosed

---

[2] BioNTech made its last statement about the number of ordered doses in its November 7, 2022 earnings release.  (¶106.)  BioNTech's March 27, 2023 disclosures about dose numbers related only to doses previously shipped or invoiced in 2022 (¶¶121, 125) and are no longer challenged.

[3] The only statement cited in the Opposition arguably relating to "demand" is a forward-looking statement, protected by the PSLRA's safe harbor (*infra* at Section I.C), which Plaintiffs misrepresent as predicting "increased demand" (Opp. at 10 (citing ¶132)).  That statement actually disclosed BioNTech's expectation of *lower* overall demand, notwithstanding the limited effect of a newly authorized vaccine:  "While a vaccine adaptation is expected to lead to increased demand, ***fewer primary vaccinations and lowered population-wide levels of boosting are anticipated***."  (¶132; Ex. M at 2 (emphasis added).)

2

changes in "demand" are not actionable. *Tampa Bay City Pension v. Generac Holdings Inc.*, 2025 WL 435928, at *10 (E.D. Wis. Feb. 7, 2025) (dismissing claim defendants concealed that increased "demand from COVID-19 was not a sustainable trend").[4]  Here, BioNTech's factual statements—the number of doses ordered—were demonstrably accurate.  Indeed, all were made pursuant to binding EC Purchase Agreement commitments requiring Member States to purchase pre-determined dose volumes.  (¶¶47-48, 52; *see, e.g.*, Ex. Q at 14 § I.6.3); *see Nadoff v. Duane Reade, Inc.*, 107 F. App'x 250, 252 (2d Cir. 2004) (accurate statements "not actionable"); *Steinberg v. Ericsson LM Tel. Co.*, 2008 WL 5170640, at *9 (S.D.N.Y. Dec. 10, 2008) ("historical revenue data … did not make a specific promise or prediction of [future] results").  BioNTech had no duty to pair these representations with caveats about future trends—in fact, doing so could have risked misleading investors.  (Mot. at 12); *see In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 13 (2d Cir. 2019) (no duty to disclose counterparty's breach where "discussions were … ongoing").

Even if BioNTech was obligated to speculate about demand, it satisfied its duty by (i) warning investors that demand was dynamic; (ii) providing detailed revenue information;

---

[4] Plaintiffs cite cases where, they claim, statements inflating or misstating "demand" were actionable (Opp. at 12), but that is not what those cases held, and all are factually inapposite.  In each, defendants did not misstate "demand," but inflated sales figures through improper "channel stuffing" schemes.  *See In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 134 (2d Cir. 2021) (sales-growth statements misleading because defendant inflated revenue); *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 33 (S.D.N.Y. 2019) (financial disclosures inflated inventory sales); *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 316 (S.D.N.Y. 2024) (disclosed sales inflated by "channel stuffing").  *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745 (S.D.N.Y. Feb. 5, 2024) is also inapposite because it concerned a company's sales forecast, not observed demand, which had actually "cratered" when the misstatements were made.  *Id*. at *2.  Here, (i) Defendants made no representations—express or implied—about demand, and (ii) there is no dispute BioNTech accurately represented the EC's order obligations and properly recorded its revenue.  (Mot. at 11-12.)

(iii) cautioning, in early 2023, about the "trough" year ahead; and (iv) issuing Comirnaty revenue guidance falling €3 billion or 40% below market estimates.[5]  (Mot. at 5-8; 12-15); *see Villare v. Abiomed, Inc.*, 2021 WL 4311749, at \*12 (S.D.N.Y. Sept. 21, 2021) ("detailed figures regarding market penetration and reorder rates" disclosed declining demand); *Robeco Cap. Growth Funds SICAV v. Peloton Interactive, Inc.*, 665 F. Supp. 3d 522, 542 (S.D.N.Y. 2023) (disclosures provided sufficient information to understand demand).[6]  The Opposition does not dispute this.

Attempting to undermine BioNTech's factual representations, Plaintiffs argue that BioNTech's reported orders concealed rejections or cancellations by a "dozen" EU Member States in 2022.  (Opp. at 2, 12-13.)  That is incorrect.  According to the AC, ***three***, not twelve, Member States refused deliveries—Romania, Hungary, and Poland.  (¶¶60, 69, 104.)  Moreover, those countries, which border Ukraine and were dealing with sudden and unique refugee-related budgetary constraints, collectively refused only 3.6% of the 2.5 billion doses ordered.  (*Id.*; *see* Mot. at 5-6.)[7]  These *de minimis* refusals were not indicia of global trends, let alone "cratering" demand, especially since BioNTech ***beat*** its Comirnaty revenue guidance for 2022.  (Mot. at 7); *see In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 536 (S.D.N.Y. 2020) (statements not misleading because problems "were limited to a tiny fraction" of company's stores), *aff'd*,

---

[5] Plaintiffs claim that, in 2023, Defendants stated that "BioNTech was expecting increased demand."  (Opp. at 10 (citing ¶¶132, 148).)  In reality, BioNTech stated: "While vaccine adaption is expected to lead to increased demand, ***fewer primary vaccinations and lowered population-wide levels of boosting are anticipated***."  (Ex. M at 2; Ex. P. at 2 (emphasis added).)

[6] Plaintiffs distinguish *Peloton* by arguing that BioNTech, unlike Peloton, made "no such disclaimers" about declining demand (Opp. at 15), but that is untrue.  (Mot. at 13-14.)  In fact, the AC concedes the market discerned "plummeting demand" from BioNTech's 2023 disclosures. (*E.g.*, ¶129; *see* Mot. at 14-15.)

[7] Hungary refused three million doses in November 2022, "citing the conflict in Ukraine."  *Pfizer sues Hungary as pandemic court cases mount*, POLITICO, https://www.politico.eu/article/pfizer-biontech-sues-hungary-pandemic-court-cases-mount-covid-19/ (Dec. 5, 2023).

2022 WL 17587853 (2d Cir. Dec. 13, 2022); *Steamfitters Loc. 449 Pension Plan v. Skechers U.S.A., Inc*., 412 F. Supp. 3d 353, 366 (S.D.N.Y. 2019) ("magnitude of cancellations" did not render revenue-growth statements misleading), *aff'd*, 826 F. App'x 111 (2d Cir. 2020). Additionally, the first order "cancellations," which Plaintiffs incorrectly argue occurred in 2022 (Opp. at 11-12), did not actually occur until after Pfizer and BioNTech agreed to amend the EC Purchase Agreement in *May 2023* (¶152; Exs. N-O).  That is well *after* BioNTech made its last representation about the number of pending orders on November 7, 2022.  (¶106.)  Absent allegations that BioNTech's stated "orders" were factually incorrect, the first of Plaintiffs' two remaining claims fails.

**B.    BioNTech Did Not Conceal "Imminent" Write-Offs.**

Plaintiffs' other claim is equally attenuated.  They acknowledge that Defendants cannot be liable for failing to "predict" future "write-down[s]"[8] (Opp. at 3), but argue precisely that.  The Opposition contends that "the frequency and severity of cancellations together with known obsolescence of inventory all but guaranteed an immense write-off" and that, having provided "specific facts" concerning prior write-offs, Defendants should have known "inventory was seriously overvalued[.]" (Opp. at 15-16.)  Plaintiffs therefore suggest BioNTech was obligated to: (i) caveat disclosed orders with warnings that future cancellations could precipitate write-offs, and (ii) take larger write-offs sooner to account for future obsolescence and reformulations.  Both theories are flawed.

---

[8] Plaintiffs analogize to *Novak v. Kasaks*, 216 F.3d 300, 304 (2d Cir. 2000) in suggesting that BioNTech's pre-October 2023 write-downs were inadequate. (Opp. at 15.) *Novak*, though, does not support that a company must account for future write-offs, including those resulting from not-yet-materialized factors, like virus mutations.  216 F.3d at 311.

BioNTech had no duty to prognosticate about the accounting treatment of doses subject to unauthorized "cancellations" or unrealized inventory obsolescence. *See NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*, 2012 WL 3191860, at \*13 (S.D.N.Y. Feb. 9, 2012) (rejecting claim alleging failure to take earlier write-downs); *Express Scripts*, 773 F. App'x 9 at 13. Regardless, if BioNTech had any disclosure duty, it met that obligation by disclosing: (i) write-offs from "shelf-life" expiration (¶¶66, 137, 154); (ii) a €559.4 million write-off in Q3 2022 "due to the switch" to the bivalent vaccine (¶111); and (iii) the risks of future write-offs from vaccine oversupply and reformulations (Mot. at 16-18). *See Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 302 (S.D.N.Y. 2010) ("incremental" write-downs inconsistent with fraud).[9]

Plaintiffs' complaints about the size of BioNTech's earlier write-offs also ignore "well-settled" law that, when plaintiffs challenge "the timing of an accounting write down, it is not sufficient to simply allege the write down should have occurred earlier." *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 403 (S.D.N.Y. 2020); *see In re Fannie Mae 2008 Sec. Litig.*, 525 F. App'x 16, 19 (2d Cir. 2013) (such claims implicate "imperfect business judgments" and not "fraud"). This principle applies here, where Plaintiffs theorize that Defendants should have accounted for "order cancellations" and the monovalent reformulation before the October 2023 write-off. (Opp. at 12-13, 15-16.) However, adjustments to EC order commitments—which occurred ***after*** the May 2023 amendment—do not establish that BioNTech should have taken larger write-offs sooner. (¶154; *see supra* at 5.) Nor could Defendants have foreseen write-offs

---

[9] If Plaintiffs are still challenging BioNTech's risk warnings about potential write-offs, risk warnings are "rarely [] found to be actionable by themselves," and only if they warn of risks "already occurred." *Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at \*6 (S.D.N.Y. July 16, 2020) (citation omitted). BioNTech's did not.

from the monovalent reformulation. Doing so with any precision would have required them to predict what virus strain would dominate, the necessary vaccine modifications, *and* when regulators would approve a reformulated vaccine. The AC does not show that Defendants knew these facts before BioNTech's August 2023 quarterly disclosure, its last before the October 2023 write-off. Indeed, the FDA did not authorize the monovalent vaccine until September 11, 2023[10]—in Q3 2023 (¶160)—a fact irreconcilable with Plaintiffs' theory that BioNTech should have recognized the October 2023 write-off sooner.

## C.    The PSLRA's Safe Harbor Applies.

Plaintiffs' attempts to remove Defendants' forward-looking statements from the protection of the PSLRA's safe harbor fail. (Mot. at 18-19.) First, they contend that BioNTech's projections are not "forward-looking" because they omitted "then-known impediments." (Opp. at 16-17.) That argument would eliminate the safe harbor and is uniformly rejected. *See In re Avon Prods., Inc. Sec. Litig.*, 2009 WL 848017, at *25 (S.D.N.Y. Feb. 23, 2009) ("projections of future performance" protected "even if they omit" "past or present facts that might arguably influence the[ir] reliability"), *R&R adopted*, 2009 WL 10698359 (S.D.N.Y. Mar. 18, 2009); *Abiomed*, 2021 WL 4311749, at *17 (similar).[11]

Plaintiffs' second argument—that BioNTech's cautionary language was not "meaningful" because it warned about already-materialized risks (Opp. at 14, 16)—is equally meritless. Demand had not "cratered" in 2022, when BioNTech warned that vaccine demand may "not align with [its]

---

[10]   (FDA Release, https://www.fda.gov/news-events/press-announcements/fda-takes-action-updated-mrna-covid-19-vaccines-better-protect-against-currently-circulating (Sept. 11, 2023).)

[11] Plaintiffs' cited cases involved statements addressing companies' current financial situations and not, as here, predictions about the future. (Opp. at 16 (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 246 (2d Cir. 2016) (statement about presently "strong balance sheet"); *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at *2 (S.D.N.Y. Feb. 5, 2024) (statement about present difficulties forecasting sales).)

projections or cost expenditures" and was "evolving" with concomitant revenue "fluctuations." (*E.g.*, Ex. G at 3, 39, 55; Mot. at 5-7.)[12]  Nor had the switch to a monovalent vaccine necessitated write-offs when BioNTech warned of the risks associated with reformulations.  (Mot. at 17-18.) That these risks ultimately "materialized [does] not" deprive Defendants' statements of safe-harbor protection.  *Smith v. PureCycle Techs., Inc.*, 2024 WL 5186586, at *10 (S.D.N.Y. Dec. 20, 2024).

## II.    THE AC DOES NOT PLEAD A STRONG INFERENCE OF SCIENTER.

The Opposition's generic scienter argument does not support a "strong inference" of scienter.  Plaintiffs aver that "Defendants avoided telling the truth" because they could.  (Opp. at 22-23.)  But they fail to explain *why* Defendants—who had ***no fraudulent motive***—would have benefitted from subterfuge.  (*See* Mot. at 20-21); *In re Athenex, Inc. Sec. Litig.*, 2023 WL 7690175, at *14 (W.D.N.Y. Sept. 29, 2023) (lack of motive "suggest[s] the absence of fraudulent intent"); *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 467 (S.D.N.Y. 2017) (absent motive, "strength of the circumstantial allegations ... must be correspondingly greater").  Nor can they explain how Defendants, who only had access to BioNTech's financial records, could have known about write-offs Pfizer recorded before it conveyed that information to BioNTech.  (*See* Mot. at 4, n.3.)  In lieu of such facts, Plaintiffs rely on "circumstantial evidence" (Opp. at 17-23)—none of which supports their claims.[13]

***Corporate Seniority.***  Plaintiffs speculate that Sahin and Holstein had "actual knowledge" that "demand for Comirnaty had cratered" and that "outdated inventory was obsolete" (Opp. at 18) because: (i) Sahin "'oversaw' the development of Comirnaty" (¶173 (cited Opp. at 18)); and (ii) the Individual Defendants "communicat[ed] about Comirnaty orders and inventory" with

---

[12] In 2023, BioNTech's risk disclosures were updated to warn that vaccine revenue "will decrease as demand for vaccination wanes."  (*See* Ex. I at 7; Ex. M at 40.)

[13] Plaintiffs do not defend their CW statements.  (Mot. at 23.)

investors.  (Opp. at 19-20.)[14]  But reliance on Defendants' corporate positions is meaningless absent particularized allegations that they were "specifically informed" of information contradicting the public disclosures.  *Abiomed*, 2021 WL 4311749 at *22-23 ("hands-on" management style insufficient); *see Nandkumar v. AstraZeneca PLC*, 2023 WL 3477164, at *4 (2d Cir. May 16, 2023) ("involvement" in vaccine development insufficient); *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) (allegation defendants "regularly tracked [company's] inventory" insufficient without "specify[ing] exactly what information" contradicted statements).  (Mot. at 24.)  Here, Plaintiffs allege nothing of the sort.

Instead, Plaintiffs speculate that the Individual Defendants received "contrary" information through the Collaboration Agreement-established joint committees.  (Opp. at 19.)[15]  But absent facts showing their participation in those committees, or any specific information conveyed in connection with committee meetings, the committees are irrelevant.  *See Canadian Imperial*, 694 F. Supp. 2d at 300 (rejecting claim defendant "received contradictory information because he was ultimately in charge of" product).

---

[14] The only alleged statements attributed to Sahin or Holstein about "Comirnaty orders and inventory" are SEC filings they signed.  (*E.g.*, Ex. B at 89, F-54; Ex. G at 3.)  That is different than Plaintiffs' cited cases, wherein defendants orally communicated to investors their focus on the issue.  (Opp. at 20 (citing *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 133 (D. Conn. 2021) (defendant "made statements during earnings calls" about problematic revenue); *Yannes v. SCWorx Corp.*, 2021 WL 2555437, at *4 (S.D.N.Y. June 21, 2021) (CEO "represent[ed] to investors that he personally spent weeks researching" issue); *Gauquie v. Albany Molecular Rsch., Inc.*, 2016 WL 4007591, at *2 (E.D.N.Y. July 26, 2016) (defendant "consistently asserted" focus on issue); *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 318 (S.D.N.Y. 2024) (defendant stated he "watch[ed] inventory very closely"); *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 351 (S.D.N.Y. 2015) (defendant stated he was "intimately familiar" with product); *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 591 (S.D.N.Y. 2010) ("officers disclosed … content during the conference calls").)

[15] Pfizer handled marketing and distributing Comirnaty in most countries.  (Mot. at 4.)

Similarly, Plaintiffs assert that the "Individual Defendants had the same information as Pfizer" because its CEO "acknowledged … a massive write-off" in January 2023." (Opp. at 19.)[16] But that is *not* what Pfizer's CEO said. (Mot. at 7-8, 22-23.) The Court must disregard Plaintiffs' characterization because the earnings call transcript contradicts it. *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 2018 WL 1273343, at *4 (S.D.N.Y. Mar. 5, 2018) (Failla, J.) (rejecting allegations contradicted by "documents upon which [the] pleadings rely"); (Ex. K at 15.)

***Speculation About What Defendants "Should Have Known."*** Lacking particularized allegations, Plaintiffs resort to illogical arguments about what Defendants "should" have discerned. They first contend that Member States' well-publicized complaints and order "cancellations" made Defendants aware of decreased Comirnaty demand. (Opp. at 18.) Plaintiffs, however, "cannot rely on information generally known or available to the public" to establish fraudulent intent, especially when, as here, Defendants lacked advance knowledge of that information. *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011). Plaintiffs next argue that Defendants knew that *future* "formulation changes in the vaccine" would lead to write-offs because of BioNTech's *past* write-offs. (Opp. at 22.) This too fails because vaccine reformulations were reactive to *new* variants. (*See supra* at 6); *In re Sec. Cap. Assur. Ltd. Sec.*

---

[16] Plaintiffs' cases are inapposite because in each, the plaintiffs specifically alleged the individual defendants' receipt of contrary information. (Opp. at 18); *Christine Asia Co. v. Ma*, 718 F. App'x 20, 23 (2d Cir. 2017) (specifying meeting where information was conveyed to executives); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72-73 (2d Cir. 2001) ("specifying who prepared internal company reports, how frequently the reports were prepared and who reviewed them"); *Karimi v. Deutsche Bank Aktiengesellschaft*, 607 F. Supp. 3d 381, 398 (S.D.N.Y. 2022) (CWs "described escalating [underlying] issues toward the executive level"). Not here.

10

*Litig.*, 729 F. Supp. 2d 569, 596 (S.D.N.Y. 2010) (defendants "could not have been expected to anticipate the crisis").[17]

> **Core Operations.**  Plaintiffs also rely on the "core operations" doctrine (Opp. at 20), which the PSLRA "significantly limited," if not eliminated.  *Bratusov v. Comscore, Inc*., 2020 WL 3447989, at \*13 (S.D.N.Y. June 24, 2020) (Failla, J.).  Even if it were a valid doctrine, the operations relevant to Plaintiffs' claims are BioNTech's accounting determinations, which are not "core" to the Company.[18]  *Hensley v. IEC Elecs. Corp*., 2014 WL 4473373, at \*5 (S.D.N.Y. Sept. 11, 2014) ("accounting for 'work-in-process' inventory" was not a "core operation").[19]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

---

[17] The over two months between BioNTech's issuance of 2023 Comirnaty revenue guidance (on August 7, 2023) and the announced write-off (on October 16, 2023) (Opp. at 21), is too large to create any negative inferences.  (Mot. at 22 n.15); *see In re Jumei Int'l Holding Ltd. Sec. Litig*., 2017 WL 95176, at \*5 (S.D.N.Y. Jan. 10, 2017) (theory inadequate under PSRLA); *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Hldgs., Inc*., 2022 WL 989240, at \*34 (W.D. Tenn. Mar. 31, 2022) ("more than two month[]" gap too large), *aff'd*, 83 F.4th 514 (6th Cir. 2023).  The "magnitude" of the write-off is also beside the point.  (*See* Opp. at 21-22); *Dobina v. Weatherford Int'l Ltd*., 909 F. Supp. 2d 228, 251 (S.D.N.Y. 2012).

[18] Plaintiffs' authority is in accord.  *See, e.g*., *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 171 (S.D.N.Y. 2021) (cited Opp. at 20) ("[a]llegations regarding core operations [and] the size of the fraud … are not, on their own, sufficient to allege scienter").

[19] Because Plaintiffs' primary claims fail, the Section 20(a) claim also fails.  (Mot. at 25.)

Date: March 13, 2025

**KATTEN MUCHIN ROSENMAN LLP**

*/s/  Bruce G. Vanyo*
Bruce G. Vanyo
bruce@katten.com
Jonathan Rotenberg
jrotenberg@katten.com
Sarah Eichenberger
sarah.eichenberger@katten.com
50 Rockefeller Plaza
New York, New York 10020
Telephone: (212) 940-8800

*Attorneys for Defendants*

12

## <u>WORD COUNT CERTIFICATION</u>

I, Bruce G. Vanyo, certify, pursuant to Local Civil Rule 7.1(c), that the foregoing Memorandum of Law contains 3,500 words, excluding the caption, Table of Contents, Table of Authorities, and signature block, as determined by the word-processing system used to prepare this document.

**KATTEN MUCHIN ROSENMAN LLP**

<u>/s/  Bruce G. Vanyo</u>
Bruce G. Vanyo
bruce@katten.com
50 Rockefeller Plaza
New York, New York 10020
Telephone: (212) 940-8800

*Attorneys for Defendants*

13